# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 6, 2014

## STATE OF TENNESSEE v. DOMINIQUE DAVON HOLMES

**Appeal from the Circuit Court for Madison County**
**No. 13-99, 13-100    Honorable Donald H. Allen, Judge**

---

**No. W2013-01878-CCA-R3-CD  -  Filed September 5, 2014**

---

The Defendant-Appellant, Dominique Davon Holmes, entered guilty pleas to aggravated burglary, robbery, aggravated criminal trespass, and two counts of assault.  Pursuant to the plea agreement, he received an effective five-year sentence with the manner of service to be determined by the trial court.  After the sentencing hearing, the trial court ordered the Defendant to serve his five-year sentence in the Tennessee Department of Correction.  On appeal, he argues that the trial court abused its discretion in denying him an alternative sentence.  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Andrea Sipes Lester, Jackson, Tennessee, for the Defendant-Appellant, Dominique Davon Holmes.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin E.D. Smith, Assistant Attorney General; James G. Woodall, District Attorney General; and Brian Gilliam, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Plea Submission Hearing.**  At the June 24, 2013 plea submission hearing, the State summarized the facts supporting the Defendant's guilty pleas:

> In 13-99, the State would show on Count 1 that the defendants on September the 29th of 2012 while here in Madison County did unlawfully enter or remain on property belonging to Larry Horne and/or Pamela Horne.

At the time, both of the defendants . . . knew that they did not have the effective consent of the owner to be there and were reckless about whether their presence would cause fear for the safety of another.

Count 2, on that same day that both defendants did intentionally, knowingly or recklessly cause bodily injury to Larry Horne or to cause him to fear imminent bodily injury and in Count 3, that both . . . did intentionally, knowingly or reckless[ly] cause bodily injury to Pamela Horne or did place her in fear of imminent bodily injury.

. . . [O]n September [29, 2012], the Hornes[] . . . were across the street [from their home] when they noticed four black males walking around their residence. According to the Hornes, one [man] appeared to be looking in the windows and this caused the Hornes to be concerned about what was going on on their property. They went across the street and approached all four [men]. One of [the men] had stated that their vehicle had broken down and needed a jump. At some point then there was a confrontation between the two Hornes . . . and the four men who were in that car described as a black hatchback. It was later identified as a black Nissan Versa. They got into a confrontation in which Ms. Horne was punched in the face. She reported that she was attacked by all four of the black males that were on the property and also Mr. Larry Horne had indicated that he was taken to the ground and that he was beaten by the four black males that were on that property.

They later left the scene. The sheriff's department was called. . . . [T]hat same vehicle [][,] based on the description and identification provided by the Hornes[,] was later found at a Sonic here in Jackson[,] Madison County. Deputies made contact with the four black males[.] . . . They were later identified by the [Hornes] as the four people who were on their property and who assaulted them[.]

. . . .

In 13-100, the State would show in Count 1 that the defendants on or about September the 29th [of 2012] while here in Madison County did unlawfully enter a habitation without the effective consent of the owner, Curtis Staggs, and did so with intent to commit theft of property. In Count 2[,] [] on that same day while here in Madison County, they did knowingly or intentionally obtain property from him by violence or by force from his person. . . without his effective consent.

-2-

Chronologically, this case actually happened first. Before the defendants went to the Horne house . . . there was an incident at Mr. Staggs'[s] house. . . . [When Mr. Staggs] arrived home at his residence[,] he saw . . . three or four black males running out of his home. He stated that he approached them and asked what was going on and . . . at that point one of them, and he wasn't sure which one, but one of them had punched him and as he went to the ground, he reported that he was hit or kicked two or three more times at least by the other individuals. . . . He reported that he fell to the ground and . . . the only thing he noticed missing was a set of keys that he had in his pants pocket.

Mr. Staggs had given a description of a black vehicle, a small SUV type vehicle. . . . It was later found at that Sonic. When sheriff's deputies made contact with the four individuals, . . . they found in the front passenger area a set of keys[.] . . . Later that set of keys was given to Mr. Staggs and he was able to identify that as the set of keys that was taken from him during the attack that had happened earlier in the evening of September the 29th.

So the aggravated burglary is the entry into the home by these four defendants. Nothing was reported stolen or taken from the home, so they aren't charged with theft. . . . [T]he robbery is the taking of the keys from [Mr. Staggs] by the use of violence or force[,] in this case punching and kicking him and then removing those keys.

The trial court accepted the Defendant's guilty pleas to three Class A misdemeanors in case number 13-99 and two Class C felonies in case number 13-100. Pursuant to the plea agreement, he was sentenced to 11 months and 29 days for each offense in case number 13-99 and five years for each offense in case 13-100, with all counts to be served concurrently.

**Sentencing Hearing.** At the July 29, 2013 sentencing hearing, the State introduced the presentence investigation report, which indicated that the Defendant had no prior criminal history. The report also included victim impact statements on behalf of the Hornes and Curtis Staggs.

Bobby Holmes, the Defendant's grandfather, testified that his grandson had lived with him since infancy. He stated that he depended on the Defendant to help him out around the house, including with cleaning, washing cars, and yard maintenance. He said that the Defendant went to church with him every Sunday and then stopped attending after the Defendant completed high school and began working. Mr. Holmes could not recall whether the Defendant had ever been in trouble before. He said that the Defendant could live with

-3-

him if released on probation and that he would help the Defendant comply with the requirements.

Steve Hayes testified that he attended the same church as the Defendant. He said that the Defendant helped operate the sound system every Sunday. According to Mr. Hayes, the Defendant went to church every Sunday for twelve to fifteen years and stopped attending when he began to work on Sundays. He had no idea why the Defendant committed the offenses, and he never knew the Defendant to have been in trouble before. He stated that the Defendant was not attending church at the time of the incident in September 2012.

After hearing the proof and arguments from counsel, the trial court determined the appropriate manner of service of the effective five-year sentence. It considered the evidence presented at the plea submission hearing and at the sentencing hearing. It had also reviewed the presentence report and considered the sentencing principles and the arguments of counsel regarding sentencing alternatives. When evaluating the nature and circumstances of the offenses, the court found the criminal conduct to be "a very, very serious matter" in which four young men assaulted three victims.

In weighing the applicable enhancement factors in the matter, the trial court found that the twenty-two-year-old Defendant was a leader in the commission in the offenses, which involved two or more criminal actors. See T.C.A. § 40-35-114(2) (2014). It determined that the Defendant was the leader because he was the driver who took his co-defendants to the Staggs residence with the intent to commit theft. Moreover, when confronted by Mr. Staggs, the Defendant was the first to strike him. The trial court noted that after the initial punch, the elderly victim fell to the ground and was further beaten by all four defendants. It found that the Defendant "was the one who started this brutal assault[.]" The court gave this enhancement factor great weight, noting that the Defendant had previously testified that he was the first to hit Mr. Horne as well.

The trial court further applied the enhancement factors that the victim, Mr. Staggs, was particularly vulnerable due to his advanced age; that the Defendant allowed the victim to be treated with exceptional cruelty; and that "[t]he personal injuries inflicted upon Mr. Staggs were particularly great[.]" See id. § 40-35-114(4), (5), (6). In giving great weight to these factors, the court noted that four young men severely assaulted the seventy-year-old victim and caused him to be hospitalized for serious internal injuries. The trial court found that the Defendant "never attempted to stop these other individuals from committing the assault which [he] started." The court observed that Mr. Staggs "had suffered a ruptured spleen, a lacerated liver, cuts and bruises to his face and really he was very severely beaten."

As mitigating factors, the trial court noted that the Defendant was "relatively young" and that he accepted responsibility. In reviewing the presentence report, the court noted that the Defendant reported having excellent mental health and very good physical health. It found that the Defendant's underage drinking indicated "his lack of following the rules of society[.]" The trial court also considered the fact that the Defendant did not have a prior criminal record and that he grew up without a father in the home. It noted that the Defendant had a prior work history but did not find any "substantial mitigating factors."

The court considered the Defendant's statement in his presentence report: "I didn't know this was going to happen. I'm very sorry that this happened. It will not happen again. I was at the wrong place at the wrong time." The trial court observed:

> That's his statement. That's his explanation about why he did it. Well, you know, he's the one [who] put himself at the Staggs'[s] residence the first time. He's the one who put himself at the Hornes' residence twenty minutes later. You know, I can't really understand why he says he was just in the wrong place at the wrong time. He's the one who put himself there.

The court recalled that Ms. Horne was punched in the face and that Mr. Horne was knocked to the ground and beaten by the defendants. When considering the impact on the victims, the trial court noted that the Hornes reported having lost their peace of mind and that Ms. Horne said that the assault had worsened a prior injury. The court also took into account the tremendous impact that the attack had on Mr. Staggs, as detailed in the five-page statement on his behalf. The court observed that Mr. Staggs could no longer care for himself and was dependent on family.

In ordering the Defendant to serve his sentences, the trial court ruled as follows:

> Now, in this case the Court finds as far as whether or not he should be ordered to serve this or whether or not some other alternative sentencing should be imposed, the Court finds that the facts and circumstances surrounding these offenses and the nature and the circumstances of his criminal conduct are very severe.
>
> As I said, this is a situation where Mr. Staggs was left there to care for himself; a 70 year old man laying in his driveway, beaten severely and they just up and leave and [the Defendant] is the one who drove off and left the victim in that condition.

Then you consider the fact that twenty minutes later that [the Defendant] drives them to another residence and basically does the same thing.

You know, when you start looking at the facts and circumstances, obviously these are about as serious I guess other than the fact they may have been killed or more severely hurt, it doesn't get any more serious than this.

It also shows in the Court's opinion a lack of remorse. I mean, how could you beat a 70 year old man and then turn around twenty minutes later and then beat another man in a totally different area? In the Court's opinion, it shows no concern for the wellbeing of any of these victims. No regards for their health or welfare. You know, that's just the situation we're dealing with.

In this particular case the Court finds that the interests of society in being protected from [the Defendant's] future criminal conduct are great.

The Court also finds that confinement in his case is particularly suited to provide an effective deterrent to others likely to commit similar offenses.

Again, part of the reason I'm going to deny him alternative sentencing is because I feel very confident that he was the leader in these offenses. I say that because of what he stated and what was stated by the District Attorney at the time of the guilty plea. . . . It does appear that he's the one who was the primary aggressor as to each of these victims.

The Court finds that the risk of placing him on some type of probation that he certainly would not be a good candidate for probation based upon the serious nature of these offenses.

The trial court sentenced the Defendant as a Range I, standard offender to five-years' imprisonment for the felony offenses against Mr. Staggs in case number 13-100. For his misdemeanor convictions against the Hornes in case number 13-99, the Defendant was ordered to serve his three sentences of 11 months and 29 days in the Madison County Jail. Consistent with the plea agreement, all five sentences were to be served concurrently. After the trial court entered its judgments on August 1, 2013, this timely appeal followed.

## ANALYSIS

On appeal, the Defendant contends that the trial court erred in denying him an alternative sentence. Specifically, he argues that the court failed to properly consider his

-6-

potential for rehabilitation. He further asserts that the trial court failed to apply appropriate mitigating factors. The State responds that the trial court properly imposed a five-year sentence of confinement. We agree with the State.

We review the length and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). Moreover, the misapplication of enhancement or mitigating factors does not invalidate the imposed sentence "unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id. This standard of review also applies to "questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). "A court only abuses its discretion when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" State v. Sihapanya, ___ S.W.3d ___, No. W2012-00716-SC-R11-CD, 2014 WL 2466054, at *2 (Tenn. Apr. 30, 2014) (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)). The defendant has the burden of showing the impropriety of the sentence on appeal. T.C.A. § 40-35-401(d), Sentencing Comm'n Cmts.

Pursuant to the 2005 amendments to the Sentencing Act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Id. § 40-35-210(b)(1)-(7) (2014). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5) (2014). The court must impose a sentence "no greater than that deserved for the offense committed" and "the least

severe measure necessary to achieve the purposes for which the sentence is imposed." Id. §§ 40-35-103(2), (4).

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). T.C.A. § 40-35-102(6)(D) (2014). In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). We note that a trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). "A defendant's sentence is based on 'the nature of the offense and the totality of the circumstances in which it was committed, including the defendant's background.'" State v. Trotter, 201 S.W.3d 651, 653 (Tenn. 2006) (quoting Ashby, 823 S.W.2d at 168). The seriousness of the offense alone may justify a trial court's denial of alternative sentencing. See Trotter, 201 S.W.3d at 655.

Here, the Defendant was sentenced as a Range I, standard offender to an effective five-year sentence in accordance with his negotiated plea agreement. In case number 13-100, he was convicted of aggravated burglary and robbery, Class C felonies. See T.C.A. §§ 39-14-403, 39-13-401. Therefore, he was subject to a sentence ranging between three and six years. See id. § 40-35-112(a)(3). The Defendant was eligible for probation because each sentence was ten years or less and because the offenses were not specifically excluded by statute. See id. § 40-35-303(a). However, an eligible defendant "is not automatically entitled

to probation as a matter of law." Id. § 40-35-303(b), Sentencing Comm'n Cmts. Although the trial court shall automatically consider probation as a sentencing alternative for eligible defendants, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b). The defendant must demonstrate that probation would serve "the ends of justice and the best interests of both the public and the defendant." State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted). When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." Sihapanya, 2014 WL 2466054, at *3.

We cannot conclude that the trial court abused its discretion in denying the Defendant an alternative sentence. Because of the broad discretion given to trial courts by the 2005 amendments to the sentencing act, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." Bise, 380 S.W.3d at 706. Although the Defendant contends that the trial court failed to properly consider his potential for rehabilitation and address applicable mitigating factors, the record reflects that the court considered the statutory criteria as well the circumstances of the offense in reaching its sentencing determination. In ordering the Defendant to serve his sentence in confinement, the court found the nature and circumstances of the offenses to be "very severe" and concluded that incarceration was "particularly suited to provide an effective deterrent to others likely to commit similar offenses." See T.C.A. § 40-35-103(1)(B). The trial court further found "that the interests of society in being protected from [the Defendant's] future criminal conduct are great." The court was particularly concerned that the Defendant was the driver of the vehicle and the "primary aggressor" in both incidents, which occurred approximately twenty minutes apart. The trial court noted that the criminal conduct involved "three victims that basically were all beaten, assaulted by these four young men" and that the circumstances could not be more serious, other than if death had been involved. Although the court acknowledged that the Defendant accepted responsibility, it opined that the timing of the offenses reflected a lack of remorse and noted the lasting impact on the victims. Additionally, the trial court did not consider the Defendant to be a suitable candidate for probation due to the "serious nature of these offenses." The court found the Defendant to be the leader in the offenses and did not want to "risk placing him on some type of probation[.]" In our view, these findings reflect an implicit consideration that the Defendant lacked the potential for rehabilitation. Despite the factors favoring an alternative sentence, such as the Defendant's youth, lack of a criminal

record, or his acceptance of responsibility, the trial court determined that the seriousness of the offenses required a sentence of confinement. Moreover, although the Defendant argues that the trial court failed to properly consider the mitigating factors, we note that the statutory enhancement and mitigating factors are advisory only and that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." See id. § 40-35-114(c)(2); State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008); see also Bise, 380 S.W.3d at 706.

Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a sentence of confinement, the Defendant has failed "to either establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded" to the trial court's sentence in this case. Caudle, 388 S.W.3d at 280. Accordingly, we uphold the Defendant's effective five-year sentence in the Tennessee Department of Correction.

## CONCLUSION

Upon review, we affirm the judgments of the Madison County Circuit Court.


_____
CAMILLE R. McMULLEN, JUDGE